

FILED

2007 FEB -8 AM 9: 37

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| PATRICK L. GUILLORY *aka* TIMOTHY HUNTER, | ) ) | CASE NO. 3:06 CV 2684 |
| | ) | JUDGE DAVID A. KATZ |
| Plaintiff, | ) ) | |
| v. | ) ) | OPINION AND ORDER |
| ART JAMES, et al., | ) ) | |
| Defendants. | ) | |

On November 7, 2006, plaintiff pro se Patrick L. Guillory filed the above-captioned action under 42 U.S.C. § 1983 against Ohio Department of Rehabilitation and Correction ("ODRC") employees Art James and Deedra Ramlow. In the complaint, plaintiff alleges that funds from his account were inappropriately handled and he was placed in segregation in retaliation for complaining about his case manager. He seeks monetary damages.

**Background**

Mr. Guillory's claims against head cashier Deedra Ramlow are not clearly set forth in the pleading. It appears, however, that Mr. Guillory believes she inappropriately subtracted funds from his prison trust account to pay court costs. He indicates that on March 13, 2006, he was

notified that funds in the amount of $325.00 "would be executed from his inmate account due to [a] pending court cost." (Compl. at 3.) He states that Mr. Brant "issued plaintiff a Notice of Objection to the Judgment for Payment for any valid objections or exemptions to the collection of these costs." (Compl. at 3.) He requested a meeting and was seen "in the PNN Office." (Compl. at 3.) Mr. Guillory claims he was told to pay the money and was informed that his current account was considered frozen. Mr. Guillory was placed in the custody of the United States Marshals on March 30, 2006 and transported to another state for a pending court matter.

On April 3, 2006, while he was of the state, he received a check for $325.00. He contends, without explanation, that on April 20, 2006, "funds was [sic] executed from his account witch [sic] was in direct violation of Administrative Rules established by DRC policy and procedure." (Compl. at 3.) Mr. Guillory returned to MCI on July 7, 2006. He indicates he was able to go to the commissary "since funds was [sic] deemed paid." (Compl. at 3.) He claims that after months of doing research he noticed that the "conduct of the cashier's office was in conflict with the decisions made by the Appellate Courts." (Compl. at 3.) He contends that he purchased commissary items for a total of $ 55.90 and received a receipt showing that he had a balance of $ 390.94. He indicates that he sent a kite to head cashier, Deedra Ramlow asking her to correct the balance information on an in forma pauperis application. Mr. Guillory claims, without elaboration, that he received a response from Ms. Ramlow and noted that she had listed his balance on the court form as $ 392.81 with an average monthly balance of $141.91. That same day, he "made specific instructions to the cashier's office due to the fact that he did not want to spend any money that was not applied to him from the office of the cashier." (Compl. at 4.) He then claims he also spoke with his unit staff supervisor "about the 'ROA Exempt from Collections remark' stated in his inmate

2

demand statement." He claims his unit staff supervisor informed him that "ROA means Return on Account and [he] was exempt from court collections, but [was told to] kite the cashier's office to be sure." (Compl. at 4.) Five days later, Mr. Guillory spoke to his case manager about mailing a complaint to the court. He claims that the case manager assured him the pleading had been mailed.

Believing he could spend the balance in his prison trust account. Mr. Guillory made several purchases. He went to the commissary on September 19, 2006 and spent $ 117.77, which he claims left a balance in his account of $ 261.18. He indicates that on September 20, 2006, he completed a cash slip in the amount of $ 37.94 for the purchase of music. The cash slip was denied by the cashier's office for insufficient funds. He went to the commissary on September 26, 2006 and spent $ 99.97. He contends that this should have left him with a balance of $ 150.00; however, he indicates that he was denied access to his account after that date. He states, without explanation, that "[t]he cashier's office was in direct violation of DRC policy and procedure and broke several administration rules by not providing plaintiff with correct documents stating obligated court cost was paid." (Compl. at 4.) He asserts that Ms. Ramlow violated his Fourth Amendment right to be free from unreasonable searches and seizures by "plac[ing] false statements on federal paperwork and certify[ing] her name on this paperwork in an attempt to perjur [sic] the plaintiff by confusing him with account balances on Inmate Demand Statements." (Compl. at 17.) He also claims she denied him access to the courts, refused to process a cash slip when his account showed insufficient funds and failed to answer his kites which kept him from purchasing items from the commissary.

Mr. Guillory alleges Mr. James retaliated against him for filing grievances. Mr. Guillory initially sought assistance form his case manager to resolve his dispute with the prison cashier. He indicates that his case manager did not respond appropriately to his kites and verbal

3

inquiries and he filed a grievance against her. He also spoke to her supervisor, Art James, and told him of the difficulties he was having with his case manager and was told to utilize the grievance system. He indicates that upon completion of the Informal Complaint Resolution form, he telephoned Mr. James and asked if he could walk it up to him. Mr. James refused and instructed Mr. Guillory to utilize the prison mail system. Two days later, on October 4, 2006, Mr. Guillory was sitting on his bunk at 8:00 a.m. when officers came to his cell and informed him that he was being taken to the segregation unit under orders from Mr. James. The officers could not or would not inform him of the charges. For the next eight days, he made numerous inquiries regarding the reason for his placement in segregation and was told only that Mr. James had ordered it. Finally, on October 12, 2006, he met with Mr. James. He claims Mr. James asked, "What problem are you having with my case manager?" (Compl at. 13.) He indicates he attempted to explain but was told that the case manager claimed to be having a problem with Mr. Guillory writing her up. He was then told he would be given 10 days in segregation, denied a Rules Infraction Board hearing, and would be reassigned to a new case manager. He asserts that Mr. James denied him access to the courts, and due process by placing him in segregation. He further contends that Mr. James retaliated against him in violation of the First Amendment, and subjected him to cruel and unusual punishment in violation of the Eighth Amendment by failing to provide an adequate remedy under the grievance system for release from segregation.

## Analysis

Although pro se pleadings are liberally construed, Boag v. MacDougall. 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner. 404 U.S. 519, 520 (1972). the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim

4

upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194. 197 (6th Cir. 1996). For the reasons stated below, Mr. Guillory's claims against Ms. Ramlow and his claims of denial of due process, access to the courts, and Eighth Amendment protections against Mr. James are dismissed.

As an initial matter, Mr. Guillory brings his claims against the defendants in their official and individual capacities. A suit against a public servant in his of her official capacity imposes liability on the office he or she represents. Brandon v. Holt, 469 U.S. 464, 471 (1985). Ms. Ramlow and Mr. James are employees of the Ohio Department of Rehabilitation and Correction, and a suit against them in their official capacities would therefore be a suit against the ODRC. Because the ODRC is an arm of the State of Ohio, any action for damages asserted against it is barred by the Eleventh Amendment. Mr. Guillory cannot proceed with his claims against the defendants in their official capacity.

To state a claim for relief against the defendants in their individual capacities, Mr. Guillory must allege that Ms. Ramlow and Mr. James were personally involved in the unconstitutional conduct he alleges. "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir.1999) (citing Leach v. Shelby County Sheriff, 891 F.2d 1241, 1246 (1989)); see Monell v.

---

[1]     An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth. 114 F.3d 601. 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied. 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

Dept. of Social Services, 436 U.S. 658, 690-91 (1978). Rather. the supervisors must have actively

engaged in unconstitutional behavior. Bass, 167 F.3d at 1048. Liability must lie upon more than

a mere right to control employees and cannot rely on simple negligence. Id. Mr. Guillory does

allege that Mr. James was personally involved in some of the conduct set forth in the complaint;

however, he provides no such allegation of personal involvement for Ms. Ramlow. He states only

that Ms. Ramlow is the prison's head cashier and then describes what he considers to be anomalies

in his prison trust account balance. In order for liability to attach to this supervisor, he must allege

that she did more than play a passive role in the alleged violations or show mere tacit approval of

the events. Id. He must allege that Ms. Ramlow either directly performed unconstitutional actions

or somehow actively encouraged or condoned the actions of her inferiors. Id.; see also Copeland

v. Machulis, 57 F.3d 476, 481 (6th Cir.1995). None of his allegations are reasonably sufficient to

state a claim against Ms. Ramlow in her individual capacity.

Moreover, with respect to Ms. Ramlow, Mr. Guillory's allegations are not

completely clear. He makes several disjointed allegations in his pleading which suggest that he is

displeased because funds were deducted from his trust account for the payment of court costs. The

fact that court costs were paid, in itself, does not violate the United States Constitution. See

Gallagher v. Lane, No. 03-3363. 2003 WL 22146134 (6th Cir. Sept. 16, 2003); Erdman v. Martin,

No. 02-1302. 2002 WL 31809142 (6th Cir. Dec. 12, 2002). Although he concludes that this action

violated the Fourth Amendment, he provides no facts or legal arguments to reasonably suggest a

basis for this claim. Principles requiring generous construction of pro se pleadings are not without

limits. See Wells v. Brown. 891 F.2d 591, 594 (6th Cir. 1989): Beaudett v. City of Hampton. 775

F.2d 1274, 1277 (4th Cir. 1985). A complaint must contain either direct or inferential allegations

6

respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. See Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988). Legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual inferences. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); see also, Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir. 1971) (conclusory section 1983 claim dismissed).

Even if Mr. Guillory's claim could be construed to assert an unauthorized deprivation of property, it would still lack merit under 42 U.S.C. § 1983. To state a claim of constitutional dimensions, he also allege that state remedies for redressing the wrong are inadequate. Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir 1991); see Vicory v. Walton, 721 F.2d 1062, 1064 (6th Cir. 1983). A remedy is available in the Ohio Court of Claims. See Haynes v. Marshall, 887 F.2d 700, 704 (6th Cir.1989). Mr. Guillory does not assert that this remedy is inadequate to address his concerns.

With respect to Mr. James, Mr. Guillory asserts that he was denied access to the courts, and due process when he was placed in segregation. He further contends that Mr. James retaliated against him in violation of the First Amendment, and subjected him to cruel and unusual punishment in violation of the Eighth Amendment by failing to provide an adequate remedy under the grievance system for release from segregation. While his claim of retaliation may have arguable merit, the same cannot be said for the remainder of his claims.

Although inmates have a constitutionally protected right of access to the courts, that right is not unrestricted. Lewis v. Casey, 518 U.S. 343, 351 (1996). There is no generalized right to litigate which is protected by the First Amendment. Thaddeus-X v. Blatter, 175 F.3d 378, 391

7

(6th Cir. 1999). To state a claim for denial of access to the courts, Mr. Guillory must demonstrate that he suffered actual injury as a result of Mr. James's actions. Lewis, 518 U.S. at 351. Furthermore, the injury requirement is not satisfied by just any type of frustrated legal claim. Id. A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas corpus application, or civil rights action. Id.; Hadix v. Johnson, 182 F.3d 400, 405 (6th Cir. 1999). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration."[2] Id. at 355.

Mr. Guillory does not allege that he suffered an actual injury to a non-frivolous direct appeal of his conviction, habeas corpus petition or civil rights action. In fact, the complaint contains no indication of the manner in which any pending or intended legal action was affected by Mr. James's actions. Absent these allegations, Mr. Guillory fails to state a claim for denial of access to the courts.

Furthermore, Mr. Guillory was not denied due process when he was placed in segregation. A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989); Pusey v. City of Youngstown, 11 F.3d 652, 656 (6th Cir.1993). A prisoner does not have a liberty interest in remaining free from

---

[2]     The Supreme Court stressed that the First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Lewis, 518 U.S. at 355.

8

disciplinary segregation unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484-85 (1995). This court has repeatedly held that placement in administrative or disciplinary segregation does not constitute an atypical and significant hardship on the inmate. Mackey v. Dyke, 111 F.3d 460, 463 (6th Cir.1997); Rimmer-Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir.1995).

Finally, the failure to adequately adhere to the state's grievance procedures does not violate the Eighth Amendment. A prison official's failure to follow state administrative rules or guidelines is a question of state law. A state does not have a federal constitutional obligation to follow all of its procedures. Such a system would result in the constitutionalizing of every state rule, and would be difficult to administer. Levine v. Torvik, 986 F.2d 1506, 1515 (6th Cir. 1993). Moreover, the Eighth Amendment protects inmates only from deprivations of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Routine discomforts of prison life do not suffice. Hudson v. McMilian, 503 U.S. 1, 8 (1992). Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. Id. at 9. The failure to follow an administrative grievance procedure is not a sufficiently serious deprivation to implicate the Eighth Amendment.

Furthermore, Mr. Guillory's placement in segregation does not constitute cruel and unusual punishment. Because placement in segregation is a routine discomfort of prison life, that action alone is insufficient to support an Eighth Amendment claim. Murray v. Unknown Evert, No. 03-1411, 84 Fed. Appx. 553 at *2 (6th Cir. Dec. 8, 2003)(citing Hudson, 503 U.S. at 9).

9

## Conclusion

Accordingly, Mr. Guillory's claims against Ms. Ramlow and his claims of denial of due process, access to the courts, and Eighth Amendment protections against Mr. James are dismissed pursuant to 28 U.S.C. § 1915(e). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.[3] This case shall proceed solely against Art James on plaintiff's claim of retaliation. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon the defendants.

IT IS SO ORDERED.

DAVID A. KATZ
UNITED STATES DISTRICT JUDGE

---

[3]     28 U.S.C. § 1915(a) provides. in pertinent part:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.

10